IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENERAL NUTRITION CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION No._____ |
| ) | |
| KWANG S. CHIN, SUNJOO CHIN, ) | Jury Trial Demanded |
| HEA EAN CHIN, and H.J. UNITED, INC. ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff General Nutrition Corporation (hereafter "GNC"), by and through its undersigned counsel, files this Complaint and sets forth the following in support thereof:

### I.   INTRODUCTION

1. This case involves the termination of Franchise Agreements entered into between GNC and Kwang ("Kevin") S. Chin and Sunjoo Chin, husband and wife (collectively, the "Franchisee Defendants"), and an action for breach of contract, damages and a claim for tortious interference with contract against Hea Ean Chin and H.J. United, Inc.

2. The termination of the Franchise Agreements was based upon Franchisee Defendants' breach of the Franchise Agreements, including unauthorized and impermissible wholesaling activities, failure to report sales, and failure to pay royalties on sales as required by their Franchise Agreements.

## II.   PARTIES

3.   General Nutrition Corporation is a Pennsylvania corporation with its principal place of business at 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

4.   Upon information and belief, Defendant Kwang S. Chin is a California resident and an adult individual currently residing at 682 Palisades Drive Pacific Palisades, CA 90272.

5.   Upon information and belief, Defendant Sunjoo Chin is a California resident and is an adult individual currently residing at 682 Palisades Drive Pacific Palisades, CA 90272.

6.   Upon information and belief, Defendant Hea Ean Chin ("Chin") is a New York resident and is an adult individual currently residing at 990 W. 6th St. New York, NY 10018.

7.   Defendant H.J. United, Inc. ("HJU") is a California corporation with a principle place of business at 682 Palisades Drive Pacific Palisades, CA 90272.

## III.   JURISDICTION AND VENUE

8.   This Court has original subject matter jurisdiction of the claims herein pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship as this action is between citizens of different states: Pennsylvania (Plaintiff) and California and New York (Defendants). The amount in controversy in this action exceeds $75,000.

9.   Defendants are subject to the personal jurisdiction of this Court pursuant to a forum selection clause agreed to by Defendants in the Franchise Agreements forming the basis of this action and because Defendants have transacted business relating to this action in Pennsylvania and/or directed to entities within Pennsylvania.

10.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c) and the forum selection clause of the Franchise Agreements between the parties.  The parties specifically agreed that any action brought by GNC against Defendants shall be brought in

federal or state court within the Commonwealth of Pennsylvania in the judicial district in which GNC has its principal place of business. The parties explicitly waived all questions of personal jurisdiction, venue, and forum non convenience.

## IV.   FACTUAL HISTORY

11.   GNC is a franchisor of retail stores which sells, among other items, vitamin and mineral supplements, sports nutrition products, herbs, health foods, natural cosmetics, diet products, as well as general wellness products.

12.   On June 4, 2010, Kwang S. Chin and Sunjoo Chin executed a Franchise Agreement with GNC to operate a store ("Store No. 236") located in the Market Place at Hollywood Park, 3561 West Century Blvd., Inglewood, CA 90305 (the "Franchise Agreement for Store No. 236"). A copy of the Franchise Agreement is attached hereto as Exhibit 1.

13.   On July 31, 2009, Kwang S. Chin and Sunjoo Chin executed a Franchise Agreement with GNC to operate a store ("Store No. 8117") located in Paseo Colorado Pasadena, 234 E. Colorado Blvd., Suite 220 Pasadena, CA 91101 (the "Franchise Agreement for Store No. 8117"). A copy of the Franchise Agreement is attached hereto as Exhibit 2.

14.   The GNC Stores were governed by valid and enforceable Franchise Agreements that were each supported by adequate consideration. The Agreements provide that they shall be interpreted and construed under the laws of the Commonwealth of Pennsylvania.

15.   Under the Franchise Agreements for each of the GNC Stores, Franchisee Defendants were obligated to pay a royalty fee to GNC of 6% and make contributions to GNC's National Advertising and Promotional fund of 3% of the gross sales of each store. These amounts were calculated and invoiced by GNC to Defendants on a monthly basis.

16. Franchisee Defendants were also obligated under the Franchise Agreements to pay a service fee for their POS ("Point of Sale") unit and to pay a monthly fee for accounting and financial services provided by GNC to Defendants. These amounts were invoiced by GNC to Defendants on a revolving account basis.

17. GNC leases each of the sites for the GNC Stores formerly franchised to Defendants from the respective shopping centers. In connection with each of the Franchise Agreements, the respective franchisee(s) of each store entered into a separate sublease with GNC for the store sites whereunder Franchisee Defendants became obligated to GNC to pay rent relating to each store. True and correct copies of the Subleases for Store No. 236 and Store No 8117 are attached hereto as Exhibits 3 and 4 respectively.

18. In connection with the Franchise Agreements, GNC and Defendants entered into Product Sales Agreements obligating Franchisee Defendants to pay Plaintiff for all inventory, fixtures and equipment (collectively "Product") purchased during the life of the franchise relationship. True and correct copies of the Purchase Sales Agreements for Store Nos. 236 and Store No. 8117 are attached hereto as Exhibits 5 and 6 respectively.

19. Significantly, the Franchise Agreements for Store Nos. 236 and 8117 provides that with respect to the Proprietary Marks:

> B. <u>Direct Marketing Restriction</u>. Franchisee may solicit and sell to any customers **at the Approved Location**, provided, however, that Franchisee acknowledges that the license granted herein is limited to the operation of a retail GNC Store for sales only at the Approved Location. **Franchisee shall not operate a mail order, direct mail, catalog, telemarketing, wholesale, exporting, distribution, direct sales, direct marketing or similar business, including through the use of the internet, including through social media and social networking site such as Twitter and Facebook, which permits customers to purchase and receive products or services without being present at the Approved**

> **Location.** Franchisee acknowledges that Franchisor, its Affiliates, other franchisees and licensees also may solicit and sell to any customers wherever located. Franchisee shall have no rights to such sales by Franchisor, its Affiliates or other franchisees or licensees. **For purposes of this Agreement, "wholesale business" or "wholesaling" shall mean when the Franchisee sells, transfers or conveys, or transacts to sell, transfer or convey, Products to any such person or entity that it knows, should know or has reason to suspect will resell such Products;** provided that it shall not mean bona fide transfers of Products between GNC franchisees made in the ordinary course of business from a retail GNC Store and which allow a franchisee to satisfy the legitimate needs of a retail customer.

(Exhibits 1 and 2, §.2-B)(Emphasis added).

20. Both Franchise Agreements also provide that Franchisee Defendants shall be in default under the respective Agreement and all the rights granted therein shall immediately terminate without GNC affording Defendants any opportunity to cure the default if "Franchisee operates a mail order, direct mail, catalog, telemarketing, wholesale, exporting, distribution, direct sales, direct marketing or similar business, including through the use of the Internet, which permits customers to purchase and receive products or services without being present at the Approved Location, contrary to the terms of Section 2.B. of this Agreement." (Exhibits1and 2, § 20.B (xvi)).

21. At Section 22 of the Franchise Agreement, Defendants agreed that during the term of the Agreement, they would not:

> Divert or attempt to divert any business or customer of the Franchised business to any Competitive Business, by direct inducement or otherwise, (ii) do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the GNC System; (iii) employ or seek to employ any person who is at that time employed by Franchisor, or any other Franchisee of the Franchisor, or otherwise directly or indirectly induce such person to leave his or her employment; or **(iv) own, maintain, advise, control, operate, help, invest in, make loans to, be employed by, engage in, or have any direct or indirect interest in any Competitive Business regardless of location."**

(Exhibits 1 and 2, § 22.A).(Emphasis added)

22.    Both Franchise Agreements further provide that Defendants shall be in default under the Agreement and all the rights granted therein shall immediately terminate without GNC affording Defendants any opportunity to cure the default if "Franchisee, or any of its Principals, employees, agents or representatives, has made any material misrepresentations, or has provided any false, misleading, inaccurate or incomplete information, whether written or oral, in connection with the Franchisee's… Franchised Business pursuant to this Agreement, including, repeatedly failing to correctly record each sale on the approved POS System immediately at the time of such sale and at full retail price as required under Section 16.A." (Exhibist 1 and 2, § 20.B(vii)).

23.    Upon termination of the Franchise Agreement, Defendants are obligated to, *inter alia*, immediately cease operating the businesses franchised to them by GNC; immediately and permanently cease using any of the Proprietary Marks licensed under the Franchise Agreement; immediately turn over to GNC all Manuals and related documents owned by GNC and used in the operation of the GNC store; surrender possession of the GNC Stores to GNC; pay all sums owing to GNC and its affiliates; and grant GNC the right to purchase all inventory and merchandise from the GNC Stores (the "Post-Termination Obligations"). (Exhibits 1 & 2, § 21.B-2l.F).

24.    Defendants agreed to pay all court costs and reasonable attorneys' fees incurred by GNC in obtaining equitable relief pursuant to Section 22 of the Franchise Agreement. (Exhibits 1 and 2, § 22.H).

**Wholesaling Activities as per the Franchise Agreements**

25.     On November 23, 2016, another GNC Franchisee, operating Store No. 5761, located near the Franchisee Defendants' stores, provided GNC with information that strongly indicated that Franchisee Defendants were selling GNC branded products and other supplements on an online website http://storefarmer, and a Korean website http//storefarm.naver.com/vitaminus, ("the Korean website"). Upon information and belief, the Korean websiste is the equivalent to amazon.com in the United States.

26.     Upon investigation by GNC's Loss Prevention team, GNC found that there were several extremely conspicuous connections between Franchisee Defendants and the Korean website.

27.     GNC discovered that GNC branded products were being sold on the Korean website by H.J. United, Inc. ("HJU"), a California corporation.  According to public records the representative of HJU is Hea Ean Chin, son of Franchisee Defendants. Additionally, the address listed for HJU is the personal residence of the Franchisee Defendants. See updated address on email dated September 26, 2012 from Kwang ("Kevin") Chin to Lee Dye, then GNC Director of Franchise Operations containing his new home address (attached hereto as Exhibit 7) and identical addresses listed on a business record for  the California Secretary of State for .HJ United, Inc. and its agent for service of process, Hea Ean Chinn (attached hereto.as Exhibit 7B).

28.     Furthermore, GNC's Loss Prevention Team recognized the shipping address for product returns for HJU (1200 S. Brand Blvd., P.O. Box 194, Glendale, CA 91204) as an address also having been linked to several Amazon.com virtual stores known for selling large

quantities of GNC's products (copies of pages from those websites are attached hereto as Exhibit 8).

29. GNC's investigation revealed a number of extremely conspicuous sales and transaction patterns that indicated that Franchisee Defendants were running sales through the GNC Store 236 to make products available to fulfill orders from the Korean website and Amazon virtual stores. For example, on November 27, 2016 Store No. 236 rang into the POS system 147 transactions of which over $17,000 were in cash sales. Many of these transactions were consecutive (occurring literally within seconds/minutes of each other) and consistently of 5, 6 or 12 units of the same item.

30. Upon information and belief, Defendants together operated a wholesaling business for supplements (including GNC branded products) on the Korean website and several Amazon.com virtual stores. In so doing, Franchisee Defendants violated their Franchise Agreements justifying termination, and Chin and HJU tortiously interfering with GNC's business interest.

### Notice of Terminations of the Franchise Agreements

31. As a result, on January 4, 2017, GNC sent Kwang and Sunjoo Chin a Notice of Termination for GNC Store Nos. 236 and 8117 (Exhibit No. 9).

32. As of January 4, 2017, Franchise Defendants owed GNC a total of $89,500.10 related to the operation of GNC Store No. 236.

33. As of January 4, 2017, Franchise Defendants owed GNC a total of $62,536.22 related to the operation of GNC Store No. 8117.

## COUNT I

## BREACH OF CONTRACTS: BREACH OF FRANCHISE AGREEMENTS

### (Against Kwang and Sunjoo Chin)

34. GNC hereby incorporates by reference the allegations set forth in Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35. Franchisee Defendants have failed and refused to meet their contractual obligations to make payments when due under the aforementioned Franchise Agreements, Subleases, Product Sales Agreements, and Guarantee despite GNC's demand for such payments, and has thereby breached each of these contracts.

36. As more fully described above, Defendants have breached their contractual obligations under Sections 2-B, 20.B, 22A, 16.A, and 21.B-21.F.

37. As a direct result of Franchisee Defendants' material breaches, GNC has sustained actual and consequential damages that will be established at trial.

WHERFORE, GNC respectfully requests judgment in its favor and against Franchisee Defendants in an amount in excess of $75,000, plus interest, costs, and attorney fees; an order requiring Franchisee Defendants to return all manuals and other confidential operating material provided to Franchisee Defendants in connection with the operation of the stores governed by the Franchise Agreements; and such other relief as this Honorable Court deems appropriate.

## COUNT II

## TORTIOUS INTERFERENCE

### (Against Hea Ean Chin and H.J. United, Inc.)

38. GNC hereby incorporates by reference the allegations set forth in Paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39. Defendants Hea Ean Chin and H.J. United, Inc. had knowledge of the contractual relationship between Franchisee Defendants and GNC.

40. Defendants Hea Ean Chin and H.J. United, Inc carelessly, willfully, and maliciously interfered with GNC's business interests in its Franchise Agreements with Franchisee Defendants by setting up websites through which it sold products of GNC in direct contravention of the Franchise Agreements between Franchisee Defendants and GNC.

41. Defendants Hea Ean Chin and H.J. United, Inc. had no privilege or justification in interfering with the Franchise Agreements between Franchisee Defendants and GNC. .

42. As a result of the interference by Defendants Hea Ean Chin and H.J. United, Inc with the Franchise Agreements between Franchisee Defendants and GNC, GNC suffered economic losses.

WHERFORE, GNC respectfully requests judgment in its favor and against Defendants Hea Ean Chin and H.J. United, Inc. in an amount in excess of $75,000, plus interest, costs, and attorney fees; and such other relief as this Honorable Court deems appropriate.

Dated: January 4, 2017                                 Respectfully Submitted,

*/s/Charles H. Saul*
Charles H. Saul, Esq.
PA. ID No.19933
Margolis Edelstein
525 William Penn Place
Suite 3300
Pittsburgh, PA 15219
Telephone: (412)355-4961
Fax: (412) 642-2380
csaul@margolisedelstein.com
*Counsel for Plaintiff, General Nutrition Corporattion*

General Nutrition Corporation

*/s/ Gary R. Kelly*
Gary R. Kelly, Pa. I.D. No. 59027
Assistant General Counsel
Gary-Kelly@gnc-hq.com
300 Sixth Avenue
Pittsburgh, PA  15222
(412) 288-4621
(412) 338-8900 (fax)
Gary-Kelly@gnc-hq.com
*Counsel for Plaintiff, General Nutrition Corporation*